UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SKARLEN MESIEL ROMAN,<br><br>Petitioner,<br><br>v.<br><br>OFFICER IN CHARGE, ICE BURLINGTON HOLDING FACILITY et al.,<br><br>Respondents. | Civil No. 26-14713-LTS |

ORDER

November 25, 2026

SOROKIN, J.

Pending before the Court is Skarlen Mesiel Roman's petition for a writ of habeas corpus, brought pursuant to 28 U.S.C. § 2241. Doc. No. 1. The parties dispute whether this Court has statutory jurisdiction over the petition. For the reasons that follow, the Court determines it has jurisdiction over the petition. It will therefore order Respondents to answer the petition.

## I. BACKGROUND

Petitioner Roman is a twenty-one-year-old citizen of the Dominican Republic who lives in Peabody, Massachusetts. Doc. No. 1 ¶ 5.[1] On June 17, 2026, Roman allegedly attempted to join her immigration court merits hearing via videoconference and, after waiting for two hours, was told that the hearing had been canceled. Id. ¶ 11. That day, she was ordered removed *in*

[1] The government has not yet responded to the petition. The Court recounts the factual allegations in the petition for present purposes only.

*abstentia*. Id. ¶ 12. It is presently unclear when and how Roman received notice of the removal order.

On Tuesday, October 13, 2026, Roman reported for a scheduled check-in at the ICE Field Office in Burlington, Massachusetts. Id. ¶ 15. There, ICE officers took her into custody and detained her at the Burlington Field Office. Id.

On Thursday, October 15, 2026, counsel was retained to represent Roman in seeking habeas relief. Doc. No. 17-1 ¶ 2. On the morning of Friday, October 16, 2026, a paralegal supporting petitioner's counsel spoke with members of Roman's family, who reported that she was still being held at the Burlington Field Office. Id. ¶ 3. The paralegal then attempted to locate Roman on ICE's Online Detainee Locator System, but no results appeared. Id. ¶ 4. At approximately 9:44 a.m. on October 16, the paralegal called the Burlington Field Office to inquire about scheduling an appointment to speak with Roman.[2] Id. ¶ 5. "During the call, an officer confirmed that Ms. Roman was in Burlington" but "did not specify exactly where within Burlington she was being held" and noted that "it could take up to forty-eight hours for her to be processed." Id. At approximately 2:30 p.m., the paralegal sent a follow-up email to the Burlington Field Office's publicly available email address, boston.outreach@ice.dhs.gov. Id. ¶ 6. She received no response. Id. ¶ 7.

Unbeknownst to Roman's counsel, at some time on the morning of Friday, October 16, Roman was transported by ICE from the Burlington Field Office to Laurence G. Hanscom Field in Bedford, Massachusetts. Doc. No. 12-1 ¶¶ 8, 10. She was then placed on a flight that departed Hanscom at approximately 12:12 p.m. Id. ¶ 10; Doc. No. 16-1 at 1; Doc. No. 16-2 at 2; Doc. No. 21-1 ¶ 5. The flight stopped at McGhee Tyson Airport in Tennessee before continuing

[2] All times are provided in Eastern Daylight Time (EDT) except as otherwise noted.

on to Louisiana. See Doc. No. 16-1 at 1 (mission route "CAK BED TYS AEX CAK"). The plane landed at Alexandria International Airport in Louisiana at 4:29 p.m. (3:29 p.m. CDT) on October 16. Doc. No. 21-1 ¶ 5.

After her flight landed, Roman was placed in the Alexandria Staging Facility, which is "located next to the Alexandria International Airport." Id. ¶ 6. She was driven by bus from the Alexandria Staging Facility to the Richwood Correctional Center at approximately 7:30 p.m. (6:30 p.m. CDT). Id. ¶ 8; Doc. No. 21-2 at 1 (showing "18x females incoming" from "ASF" to "Richwood" by bus). She arrived at the Richwood Correctional Center in Monroe, Louisiana, at 10:32 p.m. (9:32 p.m. CDT) that evening. Id. ¶ 9; Doc. 12-1 ¶ 9; see also Doc. No. 21-2 at 6 (showing Roman transferred from "Boston Holdroom" to "Richwood," with "Boston, MA" as the "Origin FO" and "OAK – ERO – Oakdale, LA Sub-Office" as "Dest. FO"); Doc. No. 21-3. Both the Alexandria Staging Facility and the Richwood Correctional Center are located in the Western District of Louisiana.[3]

At 5:37 p.m. on Friday, October 16, 2026, petitioner's counsel filed, on her behalf, the instant habeas petition in the District of Massachusetts. Doc. No. 1. Counsel was unaware that, at that moment, Roman was located at the Alexandria Staging Facility. See Doc. No. 21-1 ¶ 6. Petitioner named as official-capacity Respondents: the Officer in Charge at the ICE Burlington Holding Facility; David Wesling, the Acting Field Office Director for ICE Enforcement and Removal Operations, Boston; David Venturella, the Acting Director of U.S. Immigrations and

[3] The facts regarding Roman's transfer to Louisiana are drawn from Respondents' submissions of sworn declarations of Dr. Floyd C. Cleveland, an Assistant Field Office Director for ICE ERO in Hartford, Connecticut, Doc. Nos. 12-1, 21-1, and supporting documentation, Doc. Nos. 16-1, 21-2 to -3. Roman does not dispute these facts.

Customs Enforcement; Markwayne Mullin, the Secretary of the U.S. Department of Homeland Security; and Todd Blanche, the Attorney General of the United States. Doc. No. 1.

Another Session of this Court entered an Emergency Order Concerning Stay of Transfer or Removal at 6:33 p.m. on October 16, about an hour after the petition was filed. Doc. No. 2. On Monday, October 19, 2026, this matter was assigned to the undersigned, and the Court issued its standard stay order requiring advance notice prior to any out-of-District transfer and staying Roman's removal pending further court order. Doc. Nos. 3, 6.

As of Monday, October 19, 2026, the paralegal had not received a response to her email to ICE. Doc. No. 17-1 ¶ 7. That morning, Roman's family members informed the paralegal that Roman had been transferred to the Richwood Correctional Facility in Louisiana on the evening of Friday, October 16. Id. ¶ 9. The record indicates this conversation was the first time petitioner's counsel learned of Roman's transfer to Louisiana.

The Court and parties convened for a status conference on the afternoon of October 19. Doc. No. 11. Counsel for Respondents represented that the petitioner had been moved out of Massachusetts before her habeas petition was filed. Id. The Court directed the parties to submit further briefing and evidence as to the details of Roman's transfer. Id.; Doc. Nos. 13, 15, 18. The parties have made responsive submissions, and the jurisdiction issue is ripe for resolution.[4]

## II. DISCUSSION

A petition for a writ of habeas corpus challenging physical custody is generally "subject to two threshold requirements." Van Tran v. Hyde, No. 25-cv-12546-ADB, 2025 WL 3171210, at *2 (D. Mass. Nov. 13, 2025) (citing Rumsfeld v. Padilla, 542 U.S. 426, 434 (2004)). First, the

[4] Respondents recently filed a notice of their intent to transfer Roman to a facility in Texas with available bedspace. Doc. No. 25. Roman did not file an objection within the 72-hour notice period. Respondents "acknowledge that this Court will retain jurisdiction of the Petition" notwithstanding this transfer. Id. at 1.

petition must name the "proper respondent"—the person's immediate custodian, who is typically "the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." Padilla, 542 U.S. at 434–35. Second, the district court in which the petition is filed "must actually 'have jurisdiction over'" the respondent—that is, "the person to whom the writ is addressed must be within the district court's 'territorial jurisdiction.'" Van Tran, 2025 WL 3171210, at *2 (quoting Padilla, 542 U.S. at 434, 444); see also 28 U.S.C. § 2241(a). As a general matter, then, "[w]henever a § 2241 habeas petitioner seeks to challenge his present physical custody within the United States, he should name his warden as respondent and file the petition in the district of confinement." Padilla, 542 U.S. at 447.

The immediate-custodian and detention-of-confinement rules are not absolute. If a petitioner "is held in an undisclosed location by an unknown custodian, it is impossible to apply the immediate custodian and district of confinement rules." Padilla, 542 U.S. at 450 n.18 (citing Demjanjuk v. Meese, 784 F.2d 1114 (D.C. Cir. 1986) (Bork, J., in chambers)); see also Suri v. Trump, 184 F.4th 260, 276–78 (4th Cir. 2026) (describing and applying "unknown custodian exception"). This exception recognizes that "the immediate-custodian [and district-of-confinement] rule[s] must [sometimes] bend in order to preserve Petitioner's right to petition for the writ" of habeas corpus. Van Tran, 2025 WL 3171210, at *4; accord Suri, 184 F.4th at 276.

Here, "'it is impossible' to apply the district of confinement rule because Roman was 'held in an undisclosed location'" at the time the petition was filed. Suri, 184 F.4th at 277. Roman lives in Massachusetts, and she was arrested at the Burlington Field Office in Massachusetts when she reported for a check-in. She was then detained at the Burlington Field Office for several days. Roman's family knew she was detained there, and they shared that information with her counsel's firm. ICE's Online Detainee Locator failed to display any

information regarding Roman's detention, but as of 9:44 a.m. on Friday, October 16, an official at the Burlington Field Office told the paralegal that Roman was detained at Burlington. The paralegal followed up that afternoon, but the Burlington Field Office failed to respond. The only information available to Roman's counsel when the petition was filed—based on Roman's arrest and on conversations with an official at the Burlington Field Office and Roman's family—indicated she remained in Massachusetts. See Suri, 184 F.4th at 277. No diligent attorney could have known Roman was in Louisiana at the time the petition was filed.[5] Id. "Based on the information known to [Roman's] counsel, the [District of Massachusetts] was the only logical place to file the petition." Id. at 277 & n.11 (emphasis in original) (explaining that "analysis of the unknown custodian exception turn[s] precisely on the counsel's knowledge," not simply whether "someone knew where [the petitioner] was").

Roman's immediate custodian was also "unknown" at the time the petition was filed. Suri, 184 F.4th at 278; Van Tran, 2025 WL 3171210, at *3–4. Roman's counsel reasonably

[5] Respondents respond that "[f]or Petitioner's counsel to receive notice of transfer, counsel must file a G-28" Notice of Entry of Appearance, and that "[n]o attorney has filed a G-28 Notice of Appearance" on Roman's behalf. Doc. No. 21 at 1. Respondents do not, however, establish that Roman's counsel would have been notified of the date, time, or route of Roman's transfer—including her placement at the Alexandria Staging Facility—had a G-28 been on record. The policy Respondents state specifies that, for security reasons, an attorney notification of transfer "will not include specific travel details (e.g., the day of travel, mode of travel, etc[.])." Doc. No. 21-4 at 1–2. Experience teaches that the attorney-notification policy is not invariably implemented with fidelity. See Mira Villegas v. Wesling, No. 26-cv-10851-LTS (D. Mass. Mar. 20, 2026), Dkt. No. 20 at 9–10 (describing ICE's failure to notify petitioner's counsel, who had filed a formal entry of appearance, of her transfer to another part of the country in violation of applicable policy); see also Doc. No. 24 at 2–3 (sworn declaration of attorney describing receiving "no notice of [her] client's transfer or removal from the United States directly from ICE, despite [her] G-28 being on file). Respondents offer no evidence of how the policy is implemented in practice, nor do they cite any cases in which attorneys have in fact received notice of an in-progress transfer like the one at issue here. The Court makes no judgment about the reasonableness of the failure to notify Roman's counsel; it only observes that, in the absence of notice or opportunity for counsel to learn of Roman's location, Roman's petition was filed in the proper, indeed, only possible District.

believed, based on the information available to him and after making reasonable efforts to confirm that information, that Roman remained at the Burlington Field Office in Massachusetts. Respondents assert that Roman's immediate custodian at the moment her petition was filed was "Shad Rice, Administrator at Alexandria Staging Facility." Doc. No. 21 at 1 (citing Doc. No. 21-1 ¶ 3). But Respondents provide no support for the proposition that the administrator of this staging facility—a way-stop in Roman's transfer from the Boston Field Office to the Richwood Correctional Facility—was "'the person' with the ability to produce the [Roman's] body before the habeas court."[6] Padilla, 542 U.S. at 435. More crucially, Respondents do not show how Roman's counsel could have learned of Roman's physical presence at the Alexandria Staging Facility or the identity of the facility's administrator at 5:37 p.m. on Friday, October 16, when he filed the petition. "The course of action taken by [Roman's] counsel was logical: the Petition named Respondent [David Wesling], the acting director of the ICE field office where Petitioner was last known to be detained, but it also named several more senior respondents with regional or national enforcement powers, who would retain 'legal authority to effectuate [Roman's] release,' regardless of [her] location." Van Tran, 2025 WL 3171210, at *4 (citation omitted) (quoting Padilla, 542 U.S. at 441).

Because Roman's true immediate custodian was unknown and unascertainable, and "given [Roman's] reasonable decision to name both [her] last known custodian and more senior respondents," the Court concludes that the proper respondents were named in the petition. Van

---

[6] As the Court has observed, "ICE's own handbook regarding air transfer operations reflects that the 'sending' field office retains responsibility for case management and other administrative tasks" during a transfer to a receiving field office. Mira Villegas, No. 26-cv-10851-LTS, Dkt. No. 20 at 8 n.6; see also Doc. No. 21-2 at 6 (showing Roman transferred from "Boston Holdroom" to "Richwood," with "Boston, MA" as the "Origin FO" and "OAK – ERO – Oakdale, LA Sub-Office" as "Dest. FO").

Tran, 2025 WL 3171210, at *4 (collecting cases) (citing 28 U.S.C. § 2242). Named respondents are within the Court's territorial jurisdiction, and the Court is capable of awarding the relief sought. Id. at 4 & n.6. The Court therefore concludes that jurisdiction is proper in the District of Massachusetts—the only place Roman's attorney could reasonably have filed the petition. See Suri, 184 F.4th at 278.

## III. CONCLUSION

For the foregoing reasons, the Court has statutory jurisdiction over the petition. Respondents SHALL respond to the merits of the petition by December 3, 2026.

SO ORDERED.

/s/ Leo T. Sorokin
United States District Judge